**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| | |
| Trussway Industries, Inc. | Case No. 04-21670 |
| Trussway, Ltd. | Case No. 04-21687 |
| Trussway Holdings, Inc. | Case No. 04-21688 |
| Trussway Partners, Inc. | Case No. 04-21689 |
| Trussway, Inc. Central | Case No. 04-21691 |
| Trussway, Inc. East | Case No. 04-21692 |
| Trussway, Inc. West | Case No. 04-21693 |
| T-Way L.P., Inc. | Case No. 04-21694 |
| | |
| Debtors. | Jointly Administered |
| | Under Case No. 04-21670 |

# JOINT PLAN OF REORGANIZATION

Thomas J. Salerno
Jordan A. Kroop
Craig D. Hansen
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
Two Renaissance Square, Suite 2700
40 North Central Avenue
Phoenix, Arizona 85004
(602) 528-4000

Michael P. Ridulfo
**SORRELL, ANDERSON,**
**LEHRMAN & RIDULFO, L.L.P.**
Gaslight Square
1001 Third Street, Suite 1
Corpus Christi, Texas 78404
(361) 884-4981

Counsel to Debtors and Debtors-In-Possession

Dated:  January 18, 2005

## TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................... 1
ARTICLE 1.    DEFINITIONS AND RULES OF INTERPRETATION ............................... 2
ARTICLE 2.    SUBSTANTIVE CONSOLIDATION OF ESTATES ............................... 11
    2.01.    Request for Substantive Consolidation. .......................................... 11
    2.02.    Effect of Substantive Consolidation. ............................................. 11
    2.03.    No Impact On Secured Claims. ....................................................... 11
    2.04.    No Impact On Corporate Structure. ................................................ 11
ARTICLE 3.    TREATMENT OF UNCLASSIFIED CLAIMS .................................... 11
    3.01.    Unclassified Claims. ....................................................................... 11
    3.02.    Allowed Administrative Claims. ..................................................... 11
    3.03.    Preserved Ordinary Course Administrative Claims. ....................... 12
    3.04.    Allowed Priority Tax Claims. .......................................................... 12
    3.05.    Professional Fee Claims. ................................................................. 12
    3.06.    Post-Confirmation Date Professional Fees. .................................... 12
    3.07.    Payment of Interim Amounts. ......................................................... 13
ARTICLE 4.    CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ......... 13
    4.01.    Summary of Classification. ............................................................. 13
    4.02.    Specific Classification. ................................................................... 13
ARTICLE 5.    TREATMENT OF CLAIMS AND EQUITY INTERESTS ............... 14
    5.01.    Class 1 – DIP Lenders Claim. .......................................................... 14
    5.02.    Class 2 – Prepetition Term Lenders Claims. ................................... 14
    5.03.    Class 3 – UBS L/C Claim. ............................................................... 15
    5.04.    Class 4 – Priority Claims. ................................................................ 15
    5.05.    Class 5 – Secured Tax Claims. ......................................................... 15
    5.06.    Class 6 – Miscellaneous Secured Claims. ....................................... 15
    5.07.    Class 7 – General Unsecured Claims. .............................................. 16
    5.08.    Class 8 – Equity Interests and Equity Related Claims. ................... 17
ARTICLE 6.    IMPLEMENTATION ........................................................................... 17
    6.01.    Exit Financing Facility. ................................................................... 17
    6.02.    Plan Funding. ................................................................................... 17
    6.03.    Lumber Sale. .................................................................................... 18
    6.04.    Certificate of Incorporation and By-Laws. ..................................... 18
    6.05.    Private Company Status. .................................................................. 19
    6.06.    Cancellation of Securities, Instruments and Agreements. .............. 19
    6.07.    Effectiveness of Securities, Instruments, Agreements and Documents. ..... 19
    6.08.    No Corporate Action Required. ....................................................... 19
    6.09.    Directors and Officers. .................................................................... 19
    6.10.    Operation Pending Effective Date. .................................................. 20
ARTICLE 7.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............. 20
    7.01.    Assumption or Rejection of Executory Contracts and Unexpired Leases. ..... 20
    7.02.    Approval of Assumption or Rejection. ............................................ 20
    7.03.    Cure of Defaults. ............................................................................. 21
    7.04.    Rejection Damages Bar Date. .......................................................... 21
    7.05.    Indemnification Obligations. ........................................................... 21
    7.06.    Benefit Plans. ................................................................................... 21
ARTICLE 8.    SECURITIES TO BE ISSUED UNDER THE PLAN ....................... 22
    8.01.    New Common Stock. ........................................................................ 22
    8.02.    Stockholder Agreement. .................................................................. 22
    8.03.    Stock Transfer Restrictions. ............................................................ 22
    8.04.    Section 1145 Exemption. ................................................................. 22
ARTICLE 9.    CONFIRMATION WITHOUT ACCEPTANCE FROM ALL IMPAIRED CLASSES ..... 22
    9.01.    Impaired Classes. ............................................................................ 22
    9.02.    Use of § 1129(b). ............................................................................ 23
ARTICLE 10.    DETERMINATION OF CLAIMS ....................................................... 23
    10.01.    Objections to Claims. ...................................................................... 23
    10.02.    Disputed Claims Reserve. ............................................................... 23
    10.03.    Distributions upon Allowance or Disallowance of Disputed Claims. ..... 23
    10.04.    Contingent Claims. .......................................................................... 23

**TABLE OF CONTENTS (cont.)**

Page

ARTICLE 11.   PRESERVATION OF LITIGATION CLAIMS .................................................... 24
    11.01.   Preserved Litigation Claims. ............................................................................ 24
    11.02.   Prosecution of Preserved Litigation Claims. .................................................... 24
    11.03.   Distribution of Preserved Litigation Claims Proceeds. ..................................... 24
    11.04.   Preservation of Insurance. ............................................................................... 24
ARTICLE 12.   CONDITIONS PRECEDENT ..................................................................... 24
    12.01.   Conditions to Confirmation. ............................................................................ 24
    12.02.   Conditions to Effectiveness. ............................................................................ 25
    12.03.   Waiver of Conditions. ...................................................................................... 26
ARTICLE 13.   TITLE TO PROPERTY; THIRD PARTY RIGHTS AND RELEASES ................... 26
    13.01.   Vesting of Assets. ........................................................................................... 26
    13.02.   Discharge. ....................................................................................................... 26
    13.03.   Injunction. ....................................................................................................... 26
    13.04.   Exculpation. .................................................................................................... 26
    13.05.   Releases. ......................................................................................................... 27
    13.06.   Preserved Litigation Claims and Disputed Claims Resolution. ......................... 28
    13.07.   Preservation of Insurance. ............................................................................... 28
ARTICLE 14.   RETENTION OF JURISDICTION ............................................................... 28
    14.01.   Jurisdiction. .................................................................................................... 28
ARTICLE 15.   AMENDMENT AND WITHDRAWAL OF PLAN .......................................... 29
    15.01.   Amendment of Plan. ........................................................................................ 29
    15.02.   Revocation or Withdrawal of Plan. .................................................................. 29
ARTICLE 16.   MISCELLANEOUS ................................................................................. 29
    16.01.   Effectuating Documents; Further Transactions; Timing. ................................... 29
    16.02.   Exemption From Transfer Taxes. ..................................................................... 30
    16.03.   Binding Effect. ................................................................................................ 30
    16.04.   Governing Law. ............................................................................................... 30
    16.05.   Modification of Treatment of Claims. ............................................................... 30
    16.06.   Setoffs and Recoupment. ................................................................................. 30
    16.07.   Notices. ........................................................................................................... 30
    16.08.   Delivery of Notices. ........................................................................................ 31
    16.09.   Termination of Statutory Committees. .............................................................. 31
    16.10.   Severability. .................................................................................................... 31
    16.11.   Plan Documents. ............................................................................................. 31
    16.12.   Inconsistency. ................................................................................................. 32
    16.13.   Subordination. ................................................................................................. 32
    16.14.   Withholding and Reporting Requirements. ....................................................... 32
    16.15.   Post-Effective Date Fees; Final Decree. ........................................................... 32
    16.16.   De Minimis Distributions ................................................................................. 32
    16.17.   Method of Payment; Payments, Filings, and Notices Only on Business Days. .......................... 32

**Exhibits to Plan:**
Exhibit A          Reorganized Holdings Certificate
Exhibit B          Reorganized Holdings By-Laws
Exhibit C          Preserved Litigation Claims
Exhibit D          Stockholder Agreement
Exhibit E          Assumed and Rejected Executory Contracts and Unexpired Leases
Exhibit F          Exit Facility Term Sheet
Exhibit G          Prepetition Lenders

## INTRODUCTION

Trussway Industries, Inc., Trussway, Ltd., Trussway Holdings, Inc., Trussway Partners, Inc., Trussway, Inc. Central, Trussway, Inc. East, Trussway, Inc. West, and T-Way L.P., Inc., debtors and debtor-in-possession in the above-captioned, jointly-administered Chapter 11 cases, propose the following joint plan of reorganization for the resolution of the their outstanding claims and equity interests. **All holders of Claims against, and Equity Interests in, the Debtors are encouraged to read this Plan, the Disclosure Statement, and the related solicitation materials in their entirety before voting to accept or reject this Plan.**

Subject to the restrictions on modifications set forth in Bankruptcy Code § 1127, Bankruptcy Rule 3019, and Section 15.01 of this Plan, the Debtors reserve the right to alter, amend, or modify this Plan one or more times before its substantial consummation.

The organizational chart ("**Figure 1**") below shows the relationships between, and equity ownership of, the Debtors as of the Petition Date:



**Figure 1**

# ARTICLE 1.
## DEFINITIONS AND RULES OF INTERPRETATION

Except as expressly provided or unless the context otherwise requires, all capitalized terms used in this Plan not defined when used have the meanings ascribed to them in Article 1 of this Plan. Any term used in this Plan that is not defined in this Plan but is defined in the Bankruptcy Code or the Bankruptcy Rules retains the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, terms include the plural as well as the singular and the masculine gender as well as the feminine gender.

As used in this Plan, the following terms have the following meanings:

**1.01. Administrative Claim.** A Claim for any cost or expense of administration of the Chapter 11 Cases Allowed under Bankruptcy Code §§ 503(b), 507(b) or 546(c)(2) and entitled to priority under Bankruptcy Code § 507(a)(1), including, without limitation: (a) fees payable under 28 U.S.C. § 1930; (b) actual and necessary costs and expenses incurred in the ordinary course of the Debtors' business; (c) actual and necessary costs and expenses of preserving the Estates or administering the Chapter 11 Cases; (d) all Allowed Reclamation Claims; and (e) all Professional Fee Claims to the extent Allowed by Final Order under Bankruptcy Code §§ 330, 331, or 503.

**1.02. Administrative Claims Bar Date.** The first Business Day that is 30 days after the Confirmation Date.

**1.03. Administrative Fee Order.** The *Administrative Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals*, entered by the Bankruptcy Court on January 21, 2005.

**1.04. Affiliate.** With respect to any specified Person, any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with such Person and, with respect to any specified natural Person, any other Person having a relationship by blood, marriage, or adoption not more remote than first cousins with such natural Person. For purposes of this definition, "controlling" (including, with correlative meanings, the terms "controlled by" and "under direct or indirect common control with"), as used with regard to any Person, means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of such Person, whether through the ownership of voting securities, by agreement, or otherwise.

**1.05. Agent Group.** Highland Capital Management, L.P., together with all other holders of New Common Stock that are Affiliates of, or are managed by, Highland Capital Management, L.P., as of or after the Effective Date.

**1.06. Allowed.** (a) A Claim that has been allowed by a Final Order (including the Claim of the DIP Lenders under the DIP Facility) or (b) with respect to any Claim against, or Equity Interest in, any of the Debtors: (i) (A) proof of which, request for payment of which, or application for allowance of which, was filed or deemed filed with the Bankruptcy Court on or before the Bar Date, the Administrative Claims Bar Date, the Professional Fee Bar Date, or the Rejection Damages Bar Date, as applicable, for filing proofs of claim or equity interest or requests for payment for Claims of such type against any of the Debtors or such date as established by order of the Bankruptcy Court, even if such date is after the Bar Date, the Administrative Claims Bar Date, the Professional Fee Bar Date, or the Rejection Damages Bar Date, as applicable; or (B) a Claim or Equity Interest that is allowed by the Debtors; (ii) listed as undisputed, liquidated, and non-contingent in the Schedules and as to which no objection to its allowance or motion to

estimate for purposes of allowance has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court; and (iii) in each case, a Claim or Equity Interest as to which no objection to its allowance or motion to estimate for purposes of allowance has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or, as to which any such objection or motion has been interposed, to the extent allowed by a Final Order. The term "Allowed," when used to modify a reference in this Plan to any Claim, Equity Interest, Class of Claims, or Class of Equity Interests, means a Claim or Equity Interest (or any Claim or Equity Interest in any such Class) that is so allowed (*e.g.,* an "Allowed Secured Claim" is a Claim that has been allowed to the extent of the value, as determined by the Bankruptcy Court under Bankruptcy Code § 506(a), of any interest in property of the Estate securing such Claim).

**1.07. Avoidance Actions.** All statutory causes of action preserved for the Estates under Bankruptcy Code §§ 510, 542, 543, 544, 545, 547, 548, 549, and 550.

**1.08. Ballot.** The form of ballot or ballots distributed with the Disclosure Statement to holders of Claims and Equity Interests entitled to vote on this Plan on which an acceptance or rejection of this Plan is to be indicated.

**1.09. Bankruptcy Code.** Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended from time to time and as applicable to the Chapter 11 Cases.

**1.10. Bankruptcy Court.** The United States District Court for the Southern District of Texas, Corpus Christi Division having jurisdiction over the Chapter 11 Cases and, to the extent of any reference under 28 U.S.C. § 157, the bankruptcy unit of such District Court under 28 U.S.C. § 151.

**1.11. Bankruptcy Rules.** Collectively, the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075 and any Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases.

**1.12. Bar Date.** The date or dates fixed by the Bankruptcy Court by which Persons asserting a Claim against, or Equity Interest in, the Debtors (*except* Administrative Claims and Claims arising from the rejection of executory contracts and unexpired leases in accordance with Section 7.04 of this Plan) are required to file a proof of claim or equity interest or a request for payment or be forever barred from asserting a Claim against or Equity Interest in the Debtors or their property, from voting on this Plan, and from sharing in distributions under this Plan.

**1.13. Benefit Plans.** All benefit plans of whatever type or nature that the Debtors provided to their employees, whether now in existence or previously terminated, including, but not limited to, all 401(k) plans, medical insurance plans, accidental death and dismemberment plans, disability plans, tuition reimbursement plans, dental insurance plans, and life insurance plans, and any rights of employees to extended coverage arising from any Benefit Plan whether under the terms of the Benefit Plans, under COBRA, or under applicable law.

**1.14. Business Day.** Any day other than a Saturday, Sunday, or legal holiday (as defined in Bankruptcy Rule 9006).

**1.15. Cash.** Currency, checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks, money orders, negotiable instruments, and wire transfers of immediately available funds.

**1.16. Chapter 11 Cases.** The jointly administered cases under Chapter 11 of the Bankruptcy Code in which the Debtors are the debtors and debtors-in-possession, pending before the Bankruptcy Court.

**1.17. Claim.** A claim against any Debtor or its property as defined in Bankruptcy Code § 101(5), including, without limitation: (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured arising at any time before the Effective Date; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**1.18. Class.** A category consisting of holders of Claims or Equity Interests substantially similar in nature to the Claims or Equity Interests of other holders placed in that category, as designated in Article 4 of this Plan.

**1.19. Class 7 Fund.** Cash in the amount of $250,000 used to make distributions to holders of Allowed General Unsecured Claims in Class 7 under this Plan.

**1.20. COBRA.** The Consolidated Omnibus Budget Reconciliation Act of 1986, as amended, and the regulations promulgated under that act.

**1.21. Collateral.** Any property or interest in property of the Estates subject to a Lien to secure the payment or performance of a Claim, the Lien not being subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

**1.22. Committee.** Any Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases in accordance with Bankruptcy Code § 1102.

**1.23. Confirmation Date.** The date the Bankruptcy Court enters the Confirmation Order.

**1.24. Confirmation Hearing.** The hearing held by the Bankruptcy Court to consider confirmation of this Plan under Bankruptcy Code § 1129, as such hearing may be continued or adjourned from time to time.

**1.25. Confirmation Order.** The order of the Bankruptcy Court confirming this Plan in accordance with the Bankruptcy Code. The Confirmation Order does not have to be a Final Order.

**1.26. Consolidated Estate.** The Estates of the Debtors resulting from the substantive consolidation of the Debtors in accordance with Section 2.02 of this Plan.

**1.27. Contingent Claim.** Any Claim for which a proof of claim has been filed with the Bankruptcy Court: (a) which was not filed in a fixed amount, or which has not accrued and depends on a future event that has not occurred and may never occur, and (b) which has not been Allowed on or before the Confirmation Date.

**1.28. Creditor.** Any holder of a Claim, whether or not such Claim is an Allowed Claim, encompassed within the statutory definition set forth in Bankruptcy Code § 101(10).

**1.29. Cure.** The payment on the Effective Date of Cash or other property as a condition to the assumption or assumption and assignment by any Debtor of an executory contract or unexpired lease of nonresidential real property, in accordance with Bankruptcy Code § 365(b).

**1.30. D&O Policy.** Any directors and officers liability insurance policy or any applicable errors and omissions policy applicable to directors and officers of any Debtor.

**1.31. Debtors.** Trussway Industries, Inc., a Delaware corporation; Trussway Holdings, Inc., a Delaware corporation; T-Way L.P., Inc., a Delaware corporation; Trussway Partners, Inc., a Delaware corporation;

Trussway, Inc. Central (as a successor to Ha-Marque Fabricators, Inc.), a Delaware corporation; Trussway, Inc. East (as a successor to Superior Components Inc.), a Delaware corporation; Trussway, Ltd., a Texas limited partnership; and Trussway, Inc. West (as a successor to Valley Truss Fabricators, Inc.), an Arizona corporation; as debtors and debtors-in-possession in the Chapter 11 Cases, in accordance with Bankruptcy Code §§ 1107 and 1108.

**1.32. DIP Facility.** The $20,000,000 debtor-in-possession financing facility between the DIP Lenders and the Debtors, as approved by the Bankruptcy Court in accordance with the DIP Financing Order.

**1.33. DIP Financing Order.** The order or orders of the Bankruptcy Court approving and authorizing the terms of the DIP Facility in the Chapter 11 Cases in accordance with the DIP Loan Documents.

**1.34. DIP Lenders.** Heritage Bank, SSB, as administrative agent, and all lenders under the DIP Loan Documents.

**1.35. DIP Loan Documents.** All documents and instruments evidencing, setting forth the terms and implementing the terms of the DIP Facility executed in the Chapter 11 Cases and as approved by the DIP Financing Order.

**1.36. Disallowed.** In reference to a Claim, a Claim or any portion of a Claim that has been disallowed, overruled, withdrawn, or expunged by Final Order.

**1.37. Disclosure Statement.** The written disclosure statement relating to this Plan including, without limitation, all exhibits and schedules to such disclosure statement, in the form approved by the Bankruptcy Court under Bankruptcy Code § 1125 and Bankruptcy Rule 3017.

**1.38. Disputed.** With respect to Claims or Equity Interests, any Claim or Equity Interest: (a) that is listed in the Schedules as unliquidated, disputed, or contingent, or as to which the Debtors or any other party-in-interest have (i) interposed a timely objection or request for estimation, or (ii) sought to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, in each case where such listing, objection, request for estimation, or action to limit recovery has not been withdrawn or determined by a Final Order; or (b) that is a Contingent Claim.

**1.39. Distribution Record Date.** The date, established in the Confirmation Order, by which the identities of the holders of Claims and Equity Interests are determined for purposes of entitlement to receive distributions under this Plan.

**1.40. Effective Date.** The first Business Day that is eleven days after the Confirmation Date and on which (a) no stay of the Confirmation Order is in effect and (b) all conditions to effectiveness set forth in Section 12.02 of this Plan have been satisfied or waived in accordance with the terms of this Plan.

**1.41. Equity Interest.** Any interest in any of the Debtors, including Old Common Stock, represented by any class or series of common or preferred stock issued before the Effective Date, and any warrants, options, or rights to purchase any such common or preferred stock.

**1.42. Equity Related Claim.** Any Claim arising from the rescission of a purchase or sale of an Equity Interest, or for damages arising from the purchase or sale of an Equity Interest, or any Claim by any Person that asserts equitable or contractual rights of reimbursement, contribution, or indemnification arising from such Claim, including any Claim that has been or may be asserted against any of the Debtors and their respective officers and directors asserting violations of federal securities laws including, without limitation, actions under Sections 11 and 15 of the Securities Act and Sections 10(b) and 20 of the

Exchange Act, and Rule 10b-5 promulgated by the SEC under the Exchange Act, and any applicable non-federal law.

**1.43. Estates.** The estates for each Debtor created in the Chapter 11 Cases in accordance with Bankruptcy Code § 541.

**1.44. Exchange Act.** The Securities Exchange Act of 1934, as amended, and the regulations promulgated under that act.

**1.45. Exit Financing Facility.** The post-Effective Date working capital credit facility between Reorganized Industries as borrower, and the remaining Reorganized Trussway entities as guarantors, and the lenders identified in the Exit Financing Term Sheet, on the terms and conditions in form and substance as set forth in the Exit Financing Term Sheet, comprised of the Exit Revolver and the Exit Term Loan.

**1.46. Exit Financing Term Sheet.** The description of the essential terms and conditions of the Exit Financing Facility attached to this Plan as Exhibit F.

**1.47. Exit Lenders.** The lenders providing the Exit Financing Facility as identified in the Exit Financing Term Sheet.

**1.48. Exit Revolver.** The first priority secured revolving loan portion of the Exit Financing Facility in accordance with the terms and conditions set forth in the Exit Financing Term Sheet.

**1.49. Exit Term Loan.** The term loan portion of the Exit Financing Facility, in principal amount of $68,000,000 (less any Lumber Sale Proceeds applied on or before the Effective Date to reduce the Prepetition Lender Claims of the Prepetition Term Lenders), made by the Prepetition Term Lenders, in accordance with the terms and conditions set forth in the Exit Financing Term Sheet.

**1.50. Final Order.** An order or judgment of the Bankruptcy Court: (a) as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired, or as to which any right to appeal, petition for certiorari, reargue, or rehear has been waived in writing in form and substance satisfactory to the Debtors and the Committee; and (b) if an appeal, writ of certiorari, or reargument or rehearing has been sought, as to which the highest court to which such order was appealed, or certiorari, reargument or rehearing was sought, has determined such appeal, writ of certiorari, reargument, or rehearing, or has denied such appeal, writ of certiorari, reargument, or rehearing, and the time to take any further appeal, petition for writ of certiorari, or move for reargument or rehearing has expired; but the filing of a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, with respect to such order does not prevent such order from being a Final Order.

**1.51. General Unsecured Claim.** Any Claim against one or more of the Debtors other than a Secured Claim, an Administrative Claim, an Intercompany Claim, a Priority Tax Claim, a Priority Claim, or an Equity Related Claim.

**1.52. Holdings.** Trussway Holdings, Inc., a Delaware corporation and a Debtor in the Chapter 11 Cases.

**1.53. Industries.** Trussway Industries, Inc., a Delaware corporation and a Debtor in the Chapter 11 Cases.

**1.54. Intercompany Claim.** Any Claim held by a Debtor against any other Debtor arising at any time before the Effective Date.

**1.55. IRS.** The Internal Revenue Service.

**1.56. Legacy Revolver.** The non-priming revolving loan under the Prepetition Credit Facility in the amount of $5,000,000 in principal as of the Petition Date.

**1.57. Lien.** A lien as defined in Bankruptcy Code § 101(37), except a lien that has been avoided in accordance with Bankruptcy Code §§ 544, 545, 546, 547, 548, or 549.

**1.58. Lumber Distribution Business.** The single-family lumber distribution operation maintained by Industries located at 6810 and 6802 Irvington in Houston, Texas.

**1.59. Lumber Sale.** The Debtors' or Reorganized Trussway's sale of substantially all the assets of the Lumber Distribution Business.

**1.60. Lumber Sale Proceeds.** The Lumber W/C Proceeds plus the net proceeds from the Lumber Sale.

**1.61. Lumber W/C Proceeds.** For any period after the Order For Relief Date for which a calculation is to be made, any positive cash flow generated by the amount by which the Lumber Working Capital at the beginning of that period exceeds the Lumber Working Capital as of the end of that period.

**1.62. Lumber Working Capital.** The sum of the account balances for the Lumber Distribution Business of Receivables, Inventory, Prepaid Insurance and Deposits less the sum of account balances for the Lumber Distribution Business of Accounts Payable, Accrued Commissions, Accrued Insurance, Accrued Salaries and Wages, Accrued Other Expenses, Accrued Bonus, Accrued Property Taxes, Accrued Payroll Taxes, Accrued Health Insurance/Employee Mutual Fund and Sales Tax Payable, as such terms are defined and used in the most recent financial statements for the Lumber Distribution Business, with such sums to be calculated consistently with such financial statements.

**1.63. Maximum Amount.** With respect to any Disputed Claim: (a) the amount agreed to by Reorganized Trussway and the holder of such Claim; (b) the amount, if any, estimated or determined by the Bankruptcy Court in accordance with Bankruptcy Code § 502(c); or (c) absent any such agreement, estimation or determination, the amount set forth in the proof of claim filed by the holder of such Claim or, if no amount is so set forth, the amount set forth in the Schedules for such Claim or, if no amount is so set forth, the amount estimated by Reorganized Trussway in its good faith discretion.

**1.64. New Common Stock.** The common stock, $0.001 par value per share, to be authorized under the Reorganized Holdings Certificate to be filed with the Delaware Secretary of State as of the Effective Date.

**1.65. Old Common Stock.** The equity interests represented by duly authorized, validly issued, and outstanding shares of common stock of Holdings, together with all accrued and unpaid dividends on such shares, and all options, warrants, or rights to acquire such common stock existing at any time before the Effective Date.

**1.66. Order For Relief Date.** December 21, 2004, the date on which the Bankruptcy Court entered orders for relief as to all Debtors under Bankruptcy Code § 303.

**1.67. Person.** Any individual, corporation, partnership, limited liability company, limited liability partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or associated political subdivision.

**1.68. Petition Date.** For Industries, December 7, 2004, and for all other Debtors, December 9, 2004, the dates on which involuntary petitions were filed commencing the Chapter 11 Cases.

**1.69. Plan.** This Joint Plan, either in its present form or as it may be amended, supplemented or modified from time to time in accordance with the terms of this Plan, including, except where the context otherwise requires, all its annexed exhibits and schedules.

**1.70. Plan Documents.** Collectively, (a) the Reorganized Holdings Certificate, (b) the Reorganized Holdings By-Laws, (c) the Stockholder Agreement, and (d) the Exit Facility Term Sheet, copies of which are attached as exhibits to this Plan or which will be filed with the Bankruptcy Court no later than ten days before the Confirmation Hearing, and any other contracts, instruments, releases, and other agreements or documents to be executed in order to consummate the transactions contemplated under this Plan or otherwise necessary to effect and further evidence the terms and conditions of this Plan and the documents listed in (a) through (d) of this Section 1.70.

**1.71. Prepetition Agent.** Heritage Bank, SSB, as agent under the Prepetition Credit Facility, together with its permitted successors and assigns.

**1.72. Prepetition Credit Facility.** The *Credit and Guaranty Agreement* dated July 8, 1999, as modified, amended, or supplemented through the Petition Date, between Industries as borrower, the remaining Debtors as guarantors, and the Prepetition Lenders as lenders, consisting of: (a) the Prepetition Priming Loan; and (b) the Prepetition Non-Priming Loans.

**1.73. Prepetition Lenders.** The lenders under the Prepetition Credit Facility as set forth in Exhibit G to this Plan, together with their permitted successors and assigns.

**1.74. Prepetition Non-Priming Loans.** Collectively: (a) the Legacy Revolver; (b) the Term Loan A; and (c) the Term Loan B.

**1.75. Prepetition Priming Loan.** The priming revolving loan under the Prepetition Credit Facility in the principal amount of $14,000,000 as of the Petition Date, including the Trade L/C.

**1.76. Prepetition Term Lenders.** The Prepetition Lenders holding Prepetition Non-Priming Term Loans under the Prepetition Credit Facility.

**1.77. Preserved Litigation Claims.** Subject to the releases provided for in Section 13.05 of this Plan, all rights, claims, torts, liens, actions, causes of action, Avoidance Actions, avoiding powers, proceedings, debts, contracts, judgments, offsets, damages and demands whatsoever in law or in equity, whether known or unknown, contingent or otherwise, that one or more of the Debtors or the Estates may have against any Person including, without limitation, those listed in Exhibit C to this Plan. Failure to list a Preserved Litigation Claim in this Plan does not constitute a waiver or release by the Debtors or Reorganized Trussway of such Preserved Litigation Claim.

**1.78. Preserved Ordinary Course Administrative Claim.** Any Administrative Claim based on liabilities incurred by any Debtor in the purchase, lease, or use of goods and services in the ordinary course of its business including, without limitation, Administrative Claims on account of services provided after the Petition Date to a Debtor by its employees, and Claims for unpaid rent or contract payments arising under a rejected executory contract or unexpired lease of nonresidential real property after the Petition Date and before the effective date of the rejection of such contract or lease, but excluding Professional Fee Claims.

**1.79. Priority Claim.** Any Claim (or portions of such Claim) entitled to priority under Bankruptcy Code § 507(a) other than Priority Tax Claims and Administrative Claims.

**1.80. Priority Tax Claim.** Any Claim of a governmental unit entitled to priority under Bankruptcy Code § 507(a)(8).

**1.81. Professional.** A Person: (a) employed in the Chapter 11 Cases in accordance with an order of the Bankruptcy Court under Bankruptcy Code §§ 327, 328 or 1103 and to be compensated for services under Bankruptcy Code §§ 327, 328, 329, 330, and 331; or (b) for whom compensation and reimbursement has been Allowed by a Final Order under Bankruptcy Code § 503(b).

**1.82. Professional Fee Bar Date.** The first Business Day that is 60 days after the Confirmation Date.

**1.83. Professional Fee Claim.** An Administrative Claim for compensation and reimbursement of expenses of a Professional rendered or incurred before the Effective Date submitted in accordance with Bankruptcy Code §§ 328, 330, 331, or 503(b).

**1.84. Pro Rata.** A proportionate share, such that the ratio of the consideration distributed on account of an Allowed Claim or Equity Interest in a Class to the amount of such Allowed Claim or Equity Interest is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims or Equity Interests in such Class to the amount of all Allowed Claims or Equity Interests in such Class.

**1.85. Reclamation Claim.** Any Claim against a Debtor by any Person arising out of the sale of goods to a Debtor in the ordinary course of such Person's business, so long as such Person has otherwise satisfied the applicable requirements of Bankruptcy Code § 546(c), the Uniform Commercial Code, or other non-bankruptcy statutory requirements, and any order of the Bankruptcy Court regarding such Claims.

**1.86. Rejection Claims.** All Claims arising from the rejection by any Debtor of an executory contract or unexpired lease of nonresidential real property either during the Chapter 11 Cases or in connection with this Plan, including, without limitation, Claims for future rents under Bankruptcy Code § 502(b)(6) or future contract payments and Unsecured Claims for unpaid rent or contract payments accruing before the Petition Date. Rejection Claims do not include Claims for unpaid rent or contract payments arising under a rejected executory contract or unexpired lease of nonresidential real property after the Petition Date and before the effective date of the rejection of such contract or lease; such Claims are Preserved Ordinary Course Administrative Claims.

**1.87. Reorganized Holdings By-Laws.** The Second Amended and Restated By-Laws of Reorganized Holdings, substantially in the form included as Exhibit B to this Plan.

**1.88. Reorganized Holdings Certificate.** The Second Amended and Restated Certificate of Incorporation of Reorganized Holdings, substantially in the form included as Exhibit A to this Plan.

**1.89. Reorganized Holdings.** Trussway Holdings, Inc., on and after the Effective Date.

**1.90. Reorganized Industries.** Trussway Industries, Inc., on and after the Effective Date.

**1.91. Reorganized Trussway.** The Debtors, collectively, on and after the Effective Date.

**1.92. Retiree Benefits.** Payments to any Person for the purpose of providing or reimbursing payments for retired employees of the Debtors and of any other entities as to which the Debtors are obligated to provide retiree benefits and the eligible spouses and eligible dependents of such retired employees, for medical, surgical, or hospital care benefits, or in the event of death of a retiree under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established by the Debtors before the Petition Date, as such plan, fund, or program was then in effect or as later amended.

**1.93. Schedules.** The schedules of assets and liabilities, the list of holders of interests, and the statements of financial affairs filed by the Debtors under Bankruptcy Code § 521 and Bankruptcy Rule 1007, as such schedules, list, and statements may have been or may be supplemented or amended from time to time.

**1.94. SEC.** The United States Securities and Exchange Commission.

**1.95. Secured Claim.** Any Claim (a) listed in the Schedules as a liquidated, noncontingent, and undisputed secured Claim, or (b) reflected in a proof of claim as a secured Claim, which is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with Bankruptcy Code § 506(a), or, if such Claim is subject to setoff under Bankruptcy Code § 553, net of such setoff.

**1.96. Secured Tax Claim.** Any Claim of any governmental unit or associated political subdivision that is secured by a Lien on property of an Estate by operation of applicable law including, without limitation, every Claim for unpaid real, personal property, or *ad valorem* taxes.

**1.97. Securities Act.** The Securities Act of 1933, as amended, and the regulations promulgated under that act.

**1.98. Stockholder Agreement.** The *Stockholder Agreement* entered into, substantially in the form attached to this Plan as Exhibit D, binding on all holders of New Common Stock as of the Effective Date.

**1.99. Term Loan A.** The term loan under the Prepetition Credit Facility in the principal amount of $5,193,089.57 as of the Petition Date.

**1.100. Term Loan B.** The term loan under the Prepetition Credit Facility in the principal amount of $81,594,912.53 as of the Petition Date.

**1.101. Trade L/C.** The letter of credit issued for the benefit of Centex Construction Company, one of the Debtors' customers, under the Prepetition Credit Facility in the principal amount of $350,000 as of the Petition Date.

**1.102. Trade L/C Deposit.** $350,000 of DIP Facility proceeds paid to the Prepetition Agent in accordance with the DIP Financing Order in order to cash collateralize the obligation of the Prepetition Lenders under the Prepetition Priming Loan to reimburse the issuer of the Trade L/C for a draw on the Trade L/C.

**1.103. UBS Capital.** UBS Capital II LLC, the holder of the UBS L/C Claim.

**1.104. UBS Capital L/C.** The letter of credit posted by UBS Capital in favor of the Prepetition Lenders under the Prepetition Credit Facility.

**1.105. UBS L/C Claim.** The Claim for reimbursement against the Debtors arising from the UBS L/C Draw.

**1.106. UBS L/C Draw.** The Prepetition Lenders' draws, in the aggregate principal amount of $2,500,000 or such other amounts as may be drawn on or before the Effective Date, on the UBS Capital L/C.

## ARTICLE 2.
## SUBSTANTIVE CONSOLIDATION OF ESTATES

**2.01. Request for Substantive Consolidation.** This Plan constitutes a motion for substantive consolidation of the liabilities and properties of all Debtors. This Plan requests that entry of the Confirmation Order constitute the Bankruptcy Court's granting of that motion.

**2.02. Effect of Substantive Consolidation.** As a result of the substantive consolidation of the liabilities and properties of all Debtors, upon the Effective Date: (a) the Chapter 11 Cases will be deemed to be consolidated into the Chapter 11 Case of Industries as a single consolidated case; (b) all property of the Estate of each Debtor will be deemed to be property of the Consolidated Estate for purposes of distributions under the Plan; (c) all Claims against each Estate will be deemed to be Claims against the Consolidated Estate, any proof of claim filed against one or more of the Debtors will be deemed to be a single Claim filed against the Consolidated Estate, and all duplicate proofs of claim for the same Claim filed against more than one Debtor will be deemed to be expunged; (d) all Intercompany Claims will be deemed Disallowed, discharged and eliminated, and no distributions under this Plan will be made on account of Intercompany Claims; (e) all guarantees by one Debtor of the obligations of any other Debtor or in favor of any other Debtor will be deemed eliminated, and no distributions under this Plan will be made on account of Claims based upon such guarantees; and (f) for purposes of determining the availability of the right of setoff under Bankruptcy Code § 553, all Debtors will be treated as one consolidated entity so that, subject to the other provisions of Bankruptcy Code § 553, debts due to any Debtor may be set off against the debts of any other Debtor.

**2.03. No Impact On Secured Claims.** Substantive consolidation under this Plan has no effect on valid, enforceable and unavoidable Liens, except for Liens that secure a Claim that is eliminated by virtue of substantive consolidation and Liens against Collateral that are extinguished by virtue of substantive consolidation. Substantive consolidation under this Plan does not create a Claim in a Class different from the Class in which a Claim would have been placed in the absence of substantive consolidation. The substantive consolidation contemplated in this Plan does not affect any applicable date for purposes of pursuing any Avoidance Actions.

**2.04. No Impact On Corporate Structure.** Notwithstanding the foregoing provisions in this Article 2, the substantive consolidation referred to in this Article 2 will not cause a dissolution or merger of any of the Debtors, each of which will continue as separate corporations or limited partnerships post-Effective Date. The Debtors will be required to enter into and perform their respective obligations provided for or contemplated under this Plan and the Plan Documents.

## ARTICLE 3.
## TREATMENT OF UNCLASSIFIED CLAIMS

**3.01. Unclassified Claims.** As provided in Bankruptcy Code § 1123(a)(1), Administrative Claims and Priority Tax Claims are not classified for purposes of voting on, or receiving distributions under, this Plan. Holders of such Claims are not entitled to vote on this Plan. All such Claims are instead treated separately in accordance with Sections 3.02 and 3.04 of this Plan and in accordance with the requirements set forth in Bankruptcy Code § 1129(a)(9)(A).

**3.02. Allowed Administrative Claims.**

    **a. Generally.** Each Allowed Administrative Claim (other than a Preserved Ordinary Course Administrative Claim or Professional Fee Claim) will be paid in full in Cash (or otherwise satisfied in accordance with its terms) on the latest of: (a) 30 days after the Effective Date; (b) any date the Bankruptcy Court may fix, or as soon after that date as practicable; (c) 30 days after the Claim is

Allowed; and (d) any date on which the holder of the Claim and the Debtors or Reorganized Trussway agree.

**b. Requests for Payment.** All requests for payment of an Administrative Claim (other than a Preserved Ordinary Course Administrative Claim or Professional Fee Claim) must be served on Reorganized Trussway and filed with the Bankruptcy Court no later than the Administrative Claims Bar Date. Any holder of an Administrative Claim (other than a Preserved Ordinary Course Administrative Claim or Professional Fee Claim) that fails to file and serve its request by the Administrative Claims Bar Date will be forever barred from asserting its Administrative Claim against the Debtors or Reorganized Trussway.

**3.03. Preserved Ordinary Course Administrative Claims.** Each Allowed Preserved Ordinary Course Administrative Claim will be paid in full in Cash at Reorganized Trussway's election either: (a) in accordance with the terms and conditions under which the Claim arose; or (b) in the ordinary course of Reorganized Trussway's business. Payments will be made without further action by the holder of the Preserved Ordinary Course Administrative Claim.

**3.04. Allowed Priority Tax Claims.** Any Allowed Priority Tax Claim will be paid in full in Cash on the later of 30 days after the Effective Date and 30 days after such Claim is Allowed, but the Debtors or Reorganized Trussway may elect to pay any the Claim through deferred Cash payments over a period not exceeding six years after the date of assessment of the Claim, equal to the Allowed amount of the Claim as of the Effective Date. If the Debtors or Reorganized Trussway so elect, such payments will be made in equal quarterly installments of principal plus simple interest on the unpaid portion of the Allowed Priority Tax Claim accruing from the Effective Date at the rate of six percent per year. The first payment will be made on the latest of: (a) 30 days after the Effective Date; (b) 30 days after the Claim is Allowed; and (c) another date on which the holder of the Claim and the Debtors or Reorganized Trussway agree. Reorganized Trussway retains the right to prepay any Allowed Priority Tax Claim, or any remaining balance of such a Claim, in full or in part, at any time on or after the Effective Date without premium or penalty.

**3.05. Professional Fee Claims.** Each Allowed Professional Fee Claim will be paid in full in Cash: (a) no later than three days after such Professional Fee Claim is Allowed; (b) on any other terms the holder of an Allowed Professional Fee Claim and the Debtors or Reorganized Trussway may agree; or (c) in accordance with the terms of any applicable administrative procedures order entered by the Bankruptcy Court. Each Person seeking an award by the Bankruptcy Court of Professional Fees must file with the Bankruptcy Court and serve on Reorganized Trussway its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Confirmation Date within 60 days after the Effective Date.

**3.06. Post-Confirmation Date Professional Fees.** All claims of Professionals for services rendered or expenses incurred after the Confirmation Date in connection with the Chapter 11 Cases and this Plan including, without limitation, those relating to consummation of this Plan, any appeal of the Confirmation Order, the preparation, filing, and review of Professional Fee Claims, the prosecution of Preserved Litigation Claims, and the resolution of Disputed Claims, will be paid by Reorganized Trussway on receipt of an invoice for such services, or on such other terms as Reorganized Trussway and the Professional may agree, without the need for further Bankruptcy Court authorization or entry of a Final Order. Reorganized Trussway has ten days after receiving any such invoice to object to any item contained in that invoice. If Reorganized Trussway and any Professional cannot agree on the amount of post-Confirmation Date fees and expenses to be paid to the Professional, the Bankruptcy Court will determine that amount.

**3.07. Payment of Interim Amounts.**

 **a. Payments Through Confirmation Date.** Subject to the holdback provisions of the Administrative Fee Order and this paragraph, on the Effective Date the Debtors or Reorganized Trussway will pay all amounts owing to Professionals for all outstanding amounts relating to any period through the Confirmation Date. In order to receive payment on the Confirmation Date for unbilled fees and expenses incurred through the Confirmation Date, Professionals must estimate fees and expenses due for periods that have not been billed as of the Confirmation Date and must deliver the estimates to the Debtors, counsel for the Debtors, counsel for the Committee, counsel for the Lenders not later than five days before the Confirmation Date. Within 45 days after the Confirmation Date, a Professional receiving payment for the estimated period must submit a detailed invoice covering that period in the manner and providing the detail as set forth in the Administrative Fee Order. If the estimated payment received by any Professional exceeds the actual fees and expenses for such period, this excess amount will be credited against any unpaid fees of such Professional or, if the unpaid fees are insufficient, repaid by the Professional.

 **b. Escrow For Holdback Amounts.** On the Confirmation Date, the Debtors or Reorganized Trussway will place in escrow with the Debtors' counsel Cash equal to the holdback amounts for all Professionals under the Administrative Fee Order. These funds will not be considered property of the Debtors, Reorganized Trussway, the Estates, the Consolidated Estate, or any affiliates or successors of those entities. The Debtors' counsel will pay the remaining amount of the Professional Fee Claims to the Professionals from the escrowed funds when those Claims are Allowed. When all Professional Fee Claims have been paid in full, any remaining escrowed funds held by the Debtors' counsel will be paid to Reorganized Trussway.

**ARTICLE 4.**
**CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS**

**4.01. Summary of Classification.** In accordance with Bankruptcy Code § 1123(a)(1), all Claims of Creditors and holders of Equity Interests (except those Claims receiving treatment as set forth in Article 3 of this Plan) are placed in the Classes described below for all purposes, including voting on, confirmation of, and distributions under, this Plan:

| | | |
|---|---|---|
| Class 1 | DIP Lenders Claim | Unimpaired. Deemed to accept. |
| Class 2 | Prepetition Term Lenders Claims | Impaired. Entitled to vote. |
| Class 3 | UBS L/C Claim | Impaired. Entitled to vote. |
| Class 4 | Priority Claims | Unimpaired. Deemed to accept. |
| Class 5 | Secured Tax Claims | Unimpaired. Deemed to accept. |
| Class 6 | Miscellaneous Secured Claims | Unimpaired. Deemed to accept. |
| Class 7 | General Unsecured Claims | Impaired. Entitled to vote. |
| Class 8 | Equity Interests and Equity Related Claims | Impaired. Deemed to reject. |

**4.02. Specific Classification.**

 **a. Class 1 – DIP Lenders Claim.** Class 1 consists of the Secured Claim of the DIP Lenders under the DIP Facility.

**b. Class 2 – Prepetition Term Lenders Claims.** Class 2 consists of the Secured Claims of all Prepetition Term Lenders arising under the Prepetition Non-Priming Loans.

**c. Class 3 –  UBS L/C Claim.** Class 3 consists of the UBS L/C Claim.

**d. Class 4 – Priority Claims.** Class 4 consists of all Priority Claims other than Priority Tax Claims.

**e. Class 5 – Secured Tax Claims.** Class 5 consists of all Secured Tax Claims. Each holder of a Secured Tax Claim is considered to be in its own separate subclass within Class 5, and each such subclass is deemed to be a separate Class for purposes of this Plan.

**f. Class 6 – Miscellaneous Secured Claims.** Class 6 consists of all Secured Claims other than the Secured Tax Claims in Class 5, the DIP Lenders Claim in Class 1, and the Prepetition Term Lenders Claims in Class 2. Each holder of a Miscellaneous Secured Claim is considered to be in its own separate subclass within Class 6, and each such subclass is deemed to be a separate Class for purposes of this Plan.

**g. Class 7 – General Unsecured Claims.** Class 7 consists of all General Unsecured Claims.

**h. Class 8 – Equity Interests and Equity Related Claims.** Class 8 consists of all Equity Interests, including Equity Interests in any Debtor held by any other Debtor and Equity Interests based on Old Common Stock, and Equity Related Claims.

## ARTICLE 5.
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

**5.01. Class 1 – DIP Lenders Claim.**

**a. Impairment and Voting.** Class 1 is unimpaired by this Plan. The DIP Lenders are deemed to accept this Plan and will not be solicited to vote on this Plan.

**b. Allowance of Claim.** The DIP Lenders Claim is deemed an Allowed Claim in the amount of all "Obligations," as defined in the DIP Loan Documents, for all purposes under this Plan.

**c. Treatment.** On the Effective Date, each DIP Lender will receive in full and final satisfaction of its portion of the DIP Lenders Claim Cash proceeds from the funding of the Exit Revolver in an amount equal to its portion of the DIP Lenders Claim.

**5.02. Class 2 – Prepetition Term Lenders Claims.**

**a. Impairment and Voting.** Class 2 is impaired by this Plan. The Prepetition Term Lenders in Class 2 are entitled to vote as a single class and will be solicited to vote on this Plan as a single class.

**b. Allowance of Claim.** The Prepetition Term Lenders Claims are deemed Allowed Claims in the aggregate amount of $91,788,002.10, as such amount may be increased in accordance with the Prepetition Credit Facility, plus interest, fees, costs, or charges incurred before and after the Petition Date as fully Secured Claims for all purposes under this Plan.

**c. Treatment.** On the Effective Date, each Prepetition Term Lender will receive in full and final satisfaction of its Prepetition Term Lenders Claim:

(i) A Pro Rata share, with all other Prepetition Term Lenders, of the Exit Lenders' rights and obligations of the Exit Term Loan, including a promissory note as Reorganized Trussway may issue in accordance with Section 6.01.c of this Plan;

(ii) A Pro Rata share of the Cash proceeds from the UBS L/C Draw in the amount of $1,182,906 to be made on the Effective Date, less any other amounts that may be drawn before the Effective Date;

(iii) A Pro Rata share of any Lumber Sale Proceeds through the Effective Date in accordance with Section 6.03 of this Plan; and

(iv) A Pro Rata share, with all other Prepetition Term Lenders, of the New Common Stock. The Stockholder Agreement will govern the rights, obligations, and transfer restrictions of the holders of the New Common Stock issued under this Plan.

**5.03. Class 3 – UBS L/C Claim.**

**a. Impairment and Voting.** Class 3 is impaired by this Plan. UBS Capital is entitled to vote and will be solicited to vote on this Plan.

**b. Allowance of Claim.** The UBS L/C Claim is deemed an Allowed Claim in the amount of $2,500,000 for all purposes under this Plan.

**c. Treatment.** In full and final satisfaction of the UBS L/C Claim, UBS Capital will receive no distribution and retain no property of the Estates or the Consolidated Estates on account of the UBS L/C Claim. UBS Capital and UBS AG, as applicable, will be released in accordance with Section 13.05.c of this Plan.

**5.04. Class 4 – Priority Claims.**

**a. Impairment and Voting.** Class 4 is unimpaired by this Plan. All holders of Allowed Priority Claims are deemed to have accepted this Plan and will not be solicited to vote on this Plan.

**b. Treatment.** Each holder of an Allowed Priority Claim other than a Priority Tax Claim will receive Cash in an amount equal to its Allowed Priority Claim on the later of: (i) 30 days after Effective Date; and (ii) 30 days after the Priority Claim is Allowed; unless, before the later of these two dates, the holder of such Claim and Reorganized Trussway agree in writing to a different date.

**5.05. Class 5 – Secured Tax Claims.**

**a. Impairment and Voting.** Class 5 is unimpaired by this Plan. All holders of Allowed Secured Tax Claims are deemed to have accepted this Plan and will not be solicited to vote on this Plan.

**b. Treatment.** Each holder of an Allowed Secured Tax Claim will receive Cash in an amount equal to its Allowed Secured Claim on the latest of: (i) 30 days after the Effective Date; (ii) any date the Bankruptcy Court may fix, or as soon after that date as practicable; (iii) 30 days after the Secured Tax Claim is Allowed; and (iv) the date on which the Secured Tax Claim is scheduled to be paid in the ordinary course of business under applicable law or regulation; unless, before the latest of the above dates, the holder of the Claim and Reorganized Trussway agree in writing to a different date.

**5.06. Class 6 – Miscellaneous Secured Claims.**

**a. Impairment and Voting.** Class 6 is unimpaired by this Plan. All holders of Allowed Miscellaneous Secured Claims are deemed to have accepted this Plan and will not be solicited to vote on this Plan.

**b. Retention of Liens.** The holders of Allowed Miscellaneous Secured Claims will retain their Liens on their Collateral.

**c. Treatment.** On or before ten Business Days following the Bankruptcy Court's approval of the Disclosure Statement, with respect to each holder of an Allowed Miscellaneous Secured Claim in Class 6, the Debtors will elect one of the following alternate treatments for each Allowed Miscellaneous Secured Claim and provide prompt notice of the elected option to the holder of each Allowed Miscellaneous Secured Claim:

(i) *Cash.* No later than 30 days after the Effective Date, Reorganized Trussway will pay the holder of an Allowed Miscellaneous Secured Claim Cash equal to the amount of that Claim, or any lesser amount to which the holder of such Claim and Reorganized Trussway agree, in full satisfaction and release of the Claim.

(ii) *Cure; Reinstatement.* Any default, other than a default of a kind specified in Bankruptcy Code § 365(b)(2), owed to a holder of an Allowed Miscellaneous Secured Claim will be Cured or reinstated on or before the Effective Date.

**5.07. Class 7 – General Unsecured Claims.**

**a. Impairment and Voting.** Class 7 is impaired by this Plan. All holders of Allowed General Unsecured Claims are entitled to vote and will be solicited to vote on this Plan.

**b. Treatment.**

(i) If Class 2 votes to accept this Plan or if the Bankruptcy Court finds (in the Confirmation Order or otherwise) that each holder of a Claim in Class 2 will receive under this Plan on account of such Claim deferred cash payments totaling at least the allowed amount of such Claim, of a value, as of the Effective Date, of at least the value of such holder's interest in the Estates' interest in the property subject to such holder's Liens securing such Claim, each holder of an Allowed General Unsecured Claim will receive, in full and final satisfaction of its Claim:

(A) A Pro Rata share of the Class 7 Fund on the later of: (1) 30 days after the Effective Date; and (2) 30 days after the Claim is Allowed; unless, before the later of these two dates, the holder of the Claim and Reorganized Trussway agree in writing to a different date; and

(B) A Pro Rata share of any recoveries from Preserved Litigation Claims (including Avoidance Actions), net of all fees and costs Reorganized Trussway may incur in realizing such recoveries.

(ii) If Class 2 votes to reject this Plan and the Bankruptcy Court does not find (in the Confirmation Order or otherwise) that each holder of a Claim in Class 2 will receive under this Plan on account of such Claim deferred cash payments totaling at least the allowed amount of such Claim, of a value, as of the Effective Date, of at least the value of such holder's interest in the Estates' interest in the property subject to such holder's Liens securing such Claim, holders of Allowed General Unsecured Claims will receive no distribution and retain no property of the Estates or the Consolidated Estates on account of their Claims.

**5.08. Class 8 – Equity Interests and Equity Related Claims.**

     **a. Impairment and Voting.** Class 8 is impaired by this Plan. All holders of Equity Interests and Equity Related Claims are deemed to reject this Plan and will not be solicited to vote on this Plan.

     **b. Treatment.** The Equity Related Claims will be subordinated to all Claims or Interests senior or equal to the Claim or Interest represented by the Equity Related Claims. As of the Effective Date, all Equity Interests and Equity Related Claims will be canceled and extinguished without further action under any applicable agreement, law, regulation, order, or rule. The holders of Equity Interests and Equity Related Claims will not receive or retain any rights, property, or distributions on account of their Equity Interests or Equity Related Claims under this Plan.

## ARTICLE 6.
## IMPLEMENTATION

**6.01. Exit Financing Facility.** On the Effective Date, the Exit Lenders will fund and otherwise consummate the Exit Financing Facility in accordance with a credit agreement and other loan documentation described and containing the terms and conditions set forth in the Exit Financing Term Sheet. The Exit Financing Facility will have three principal components:

     **a. Exit Revolver.** The Exit Revolver will provide extensions of credit to Reorganized Trussway up to the lesser of $25,000,000 and the Borrowing Base (as defined in the Exit Financing Term Sheet). The Exit Revolver will be used:

     (i) to satisfy the DIP Lenders Claim in accordance with Section 5.01 of this Plan; and

     (ii) to finance Reorganized Trussway's ongoing working capital needs and permitted acquisitions and capital expenditures after the Effective Date, including without limitation, certain payments to holders of Allowed Claims under this Plan.

     **b. LC Subfacility.** A sub-facility will provide for the issuance of letters of credit for Reorganized Trussway's account or risk participation agreements, or guaranties with respect to Reorganized Trussway's reimbursement obligations to other letter of credit issuers from and after the Effective Date.

     **c. Exit Term Loan.** The Exit Term Loan will provide for the Prepetition Term Lenders to roll over up to $68,000,000, less any Lumber Sale Proceeds, of the Prepetition Non-Priming Loans outstanding under the Prepetition Credit Facility on the Effective Date. The Exit Term Loan will have a term of four years, the principal balance of which will be repayable in quarterly installments commencing on August 31, 2005 based on a seven-year amortization schedule, and all other terms set forth in the Exit Financing Term Sheet or agreed to by the Exit Lenders. At the Exit Lenders' request, the Exit Term Loan may be evidenced by promissory notes issued to the Exit Lenders by Reorganized Trussway based on each Exit Lender's Pro Rata share in the Prepetition Non-Priming Loans.

**6.02. Plan Funding.**

     **a. Generally.** Funds needed to make Cash payments under this Plan will come from Reorganized Trussway's operation of its business, asset dispositions including, without limitation, the Lumber Sale, borrowings under the Exit Financing Facility, and the UBS L/C Draw to be made on the Effective Date.

     **b. Class 7 Fund.** The Class 7 Fund will include a reserve of Cash sufficient to make appropriate distribution under this Plan on account of any Disputed Claim that would have been entitled to distribution from the Class 7 Fund if that Disputed Claim were an Allowed Claim on the Effective Date.

If and when any such Disputed Claim becomes an Allowed Claim, Cash sufficient to make appropriate distribution under this Plan on account of that Claim will be made from the reserved Cash in the Class 7 Fund. The Class 7 Fund will be held in trust by Reorganized Trussway for the benefit of holders of Allowed General Unsecured Claims and will not be subject to the claims of creditors of any Reorganized Trussway entity or any of its affiliates or successors.

      **c. Funding Estimates.** No later than five Business Days before the Confirmation Hearing, the Debtors will file with the Court a detailed accounting of the Debtors' good faith estimate of the amount of Cash required by Reorganized Trussway to fund: (i) the Class 7 Fund; (ii) amounts required to be distributed under this Plan in respect of Administrative Claims, Priority Tax Claims, Priority Claims, Preserved Ordinary Course Administrative Claims, Secured Tax Claims, Miscellaneous Secured Claims, and Professional Fee Claims (whether projected to be Allowed or Disputed as of the Effective Date or otherwise payable on a date other than the Effective Date); and (iv) any Cure of any assumed executory contracts and unexpired leases of nonresidential real property under Section 7.03 of this Plan.

      **d. Trade L/C.** If, by the Effective Date, the Trade L/C has been drawn, the Prepetition Lenders under the Prepetition Priming Loan will have reimbursed the issuer of the Trade L/C for that draw, and the Prepetition Agent will have distributed the Trade L/C Deposit to those Prepetition Lenders to satisfy those Prepetition Lenders' claims arising from such reimbursement to the Trade L/C issuer. If, by the Effective Date, the Trade L/C has not been drawn but remains unexpired, the Exit Financing Facility will provide for the cash collateralization, replacement, or satisfaction of the Trade L/C, and the Trade L/C Deposit will be either returned to the Debtors or paid to the DIP Lenders and a corresponding credit given to the Debtors in connection with the closing of the Exit Financing Facility. If, by the Effective Date, the Trade L/C has expired without being drawn, the Trade L/C Deposit will be either returned to the Debtors or paid to the DIP Lenders and a corresponding credit given to the Debtors in connection with the closing of the Exit Financing Facility.

**6.03. Lumber Sale.**

      **a. Effective Date Lumber Sale Proceeds.** On the Effective Date, Reorganized Trussway must pay to the Prepetition Lenders any Lumber Sale Proceeds received on or before the Effective Date for partial satisfaction of the Prepetition Term Lenders Claims under Section 5.02.c(iii) of this Plan and the Prepetition Credit Facility.

      **b. Post-Effective Date Lumber Sale Proceeds.** Any Lumber Sale Proceeds received after the Effective Date will be applied as follows:

            (i) 100% of Lumber Sale Proceeds will be used, when received, to prepay the Exit Term Loan until the aggregate amount of Lumber Sale Proceeds so received and so used equals $13,000,000, less any Lumber W/C Proceeds received by the Prepetition Lenders as of the Effective Date;

            (ii) Any aggregate Lumber Sale Proceeds received in excess of $13,000,000 will be used to repay any outstanding advances under the Exit Revolver, without a concomitant reduction of the Exit Lenders' commitments under the Exit Revolver.

**6.04. Certificate of Incorporation and By-Laws.** As of the Effective Date and without any further action by the stockholders or directors of the Debtors or Reorganized Trussway, Holdings' certificate of incorporation and by-laws will be amended and restated substantially in the forms of the Reorganized Holdings Certificate and the Reorganized Holdings By-Laws. The Reorganized Holdings Certificate and the Reorganized Holdings By-Laws will also prohibit (to the extent required by Bankruptcy Code § 1123(a) and (b)) the issuance of non-voting equity securities. After the Effective Date, Reorganized

Holdings and any Reorganized Trussway entity may amend its certificate of incorporation and by-laws as permitted by applicable law.

**6.05. Private Company Status.** On the Effective Date, (a) Reorganized Holdings will maintain no registration under the Exchange Act and will file no reports with the SEC or otherwise be subject to the reporting requirements under the Exchange Act, and (b) the New Common Stock will not be traded on any recognized stock exchange or over-the-counter securities market. Nothing in this Section 6.05 prohibits or restricts, in any respect after the Effective Date, Reorganized Holdings from registering under the Exchange Act or listing shares of the New Common Stock on any recognized stock exchange or over-the-counter securities market.

**6.06. Cancellation of Securities, Instruments and Agreements.** On the Effective Date, except to the extent provided otherwise in this Plan, all securities, and all agreements, instruments, and other documents evidencing or governing any Equity Interests, will be automatically deemed terminated, canceled, and extinguished with respect to the Debtors and the Chapter 11 Cases (all without further action by any Person), and all obligations of the Debtors under such instruments and agreements will be deemed fully and finally waived, released, canceled, extinguished, and discharged. Without limiting the foregoing, all prior existing management services agreements will be rejected and any rights arising under any such agreement will be waived, released, canceled, extinguished, and discharged, and treated as Equity Interests under Bankruptcy Code § 510(c) for all purposes under this Plan.

**6.07. Effectiveness of Securities, Instruments, Agreements and Documents.** On the Effective Date, all securities, instruments, agreements, and documents issued, entered into, delivered, or filed under this Plan, including, without limitation, the New Common Stock, the Plan Documents, and any security, instrument, agreement or document entered into, delivered, or filed in connection with any of the foregoing, will be deemed to become effective, binding, and enforceable in accordance with its respective terms and conditions.

**6.08. No Corporate Action Required**. As of the Effective Date: (a) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements related to or contemplated by this Plan; and (b) the other matters provided for under, or in furtherance of, this Plan involving corporate action required of the Debtors, will be deemed to have occurred and become effective as provided in this Plan, and will be deemed authorized and approved in all respects without further order of the Bankruptcy Court or any further action by the stockholders or directors of the Debtors.

**6.09. Directors and Officers.**

    **a. Initial Board of Directors.** The initial board of directors of Reorganized Holdings as of the Effective Date, after giving effect to the exchange of a portion of the Prepetition Non-Priming Loans for New Common Stock in accordance with Section 5.02.c of this Plan, will consist of five directors designated or elected as follows:

        (i) For so long as the Agent Group owns more than 50% of the issued and outstanding New Common Stock, the five directors will be designated by the Agent Group, two of which will be disinterested, and one of the directors (other than the two disinterested directors) will be mutually agreed on by the Agent Group and the non-Agent Group holders of a majority of the issued and outstanding New Common Stock.

        (ii) If the Agent Group owns 50% or less but 33⅓% or more of the issued and outstanding New Common Stock: (A) the Agent Group will designate one director; (B) the Agent Group will designate two disinterested directors; (C) the Agent Group will designate one director who will be mutually agreed upon by the Agent Group and the non-Agent Group holders of a majority of the issued

and outstanding New Common Stock; and (D) the remaining one director will be elected by all holders of New Common Stock in accordance with applicable law and Reorganized Holdings' organizational documents.

(iii) If the Agent Group owns less than 33⅓% but 20% or more of the issued and outstanding New Common Stock: (A) the Agent Group will designate two directors; and (B) the remaining three directors will be elected by all holders of New Common Stock in accordance with applicable law and Reorganized Holdings' organizational documents.

(iv) If the Agent Group owns less than 20% but more than 0% of the issued and outstanding New Common Stock: (A) the Agent Group will designate one director; and (B) the remaining four directors will be elected by all holders of New Common Stock in accordance with applicable law and Reorganized Holdings' organizational documents.

**b. Initial Officers.** The Debtors' officers serving immediately before the Effective Date will serve as the initial officers of Reorganized Trussway on the Effective Date.

**c. Indemnification and Insurance.** Reorganized Trussway will provide all its directors and officers with indemnification rights and a D&O Policy, and will compensate its directors and officers, in accordance with practices customary for entities of its type. Reorganized Trussway will assume any pre-Petition Date indemnification obligations to any directors and officers employed with the Debtors as of the Petition Date and are continuing in office as of and after the Effective Date.

**6.10. Operation Pending Effective Date.** Until the Effective Date, the Debtors will continue to operate their businesses, subject to all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE 7.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01. Assumption or Rejection of Executory Contracts and Unexpired Leases.** The executory contracts and unexpired leases between any Debtor and any Person are dealt with as follows:

**a. Assumption of Executory Contracts and Unexpired Leases.** All executory contracts and unexpired leases set forth on the schedule of assumed executory contracts and unexpired leases filed with the Bankruptcy Court as part of Exhibit E to this Plan or that exist between any Debtor and any Person but do not appear on Exhibit E to this Plan will be deemed assumed by Reorganized Trussway or assumed and assigned (as indicated on Exhibit E to this Plan) as of the Effective Date, except for any executory contract or unexpired lease: (i) that has been rejected in accordance with a Final Order entered before the Confirmation Date; or (ii) as to which a motion to reject has been filed with the Bankruptcy Court before the Confirmation Date.

**b. Rejection of Executory Contracts and Unexpired Leases.** All executory contracts and unexpired leases set forth on the schedule of rejected executory contracts and unexpired leases filed with the Bankruptcy Court as part of Exhibit E to this Plan will be deemed rejected as of the Effective Date, except for any executory contract or unexpired lease that has been assumed or rejected in accordance with a Final Order entered on or before the Confirmation Date.

**7.02. Approval of Assumption or Rejection.** Entry of the Confirmation Order constitutes: (a) the approval under Bankruptcy Code §§ 365 and 1113 of the assumption or assumption and assignment of the executory contracts and unexpired leases assumed or assumed and assigned under this Plan or otherwise during the Chapter 11 Cases; and (b) the approval under Bankruptcy Code §§ 365 and 1113 of the rejection of the executory contracts and unexpired leases rejected under this Plan or otherwise during the

Chapter 11 Cases. Notwithstanding anything contained in this Section 7.02 to the contrary, the Debtors retain the right to add or change the treatment (assumed or rejected) of any executory contract or unexpired lease on Exhibit E to this Plan, thereby changing the treatment of the contract or lease under this Plan, at any time within 30 days after the Effective Date.

**7.03. Cure of Defaults.** On the Effective Date or as soon after as practicable, Reorganized Trussway will Cure any defaults under any executory contract or unexpired lease assumed or assumed and assigned under this Plan in accordance with Bankruptcy Code § 365(b)(1). Reorganized Trussway will not, and need not as a condition to assuming or assuming and assigning any executory contract or unexpired lease under this Plan, Cure any default relating to any Debtor's failure to perform a nonmonetary obligation under any executory contract or unexpired lease.

**7.04. Rejection Damages Bar Date.** All proofs of claim asserting Claims arising from the rejection of any executory contract or unexpired lease under this Plan are required to be filed with the Bankruptcy Court no later than the first Business Day that is 30 days after the Confirmation Date. Any such Claim not filed within that time will be forever barred. With respect to any executory contract or unexpired lease rejected by the Debtors before the Confirmation Date, the deadline for filing such Claims is as set forth in previous orders of the Bankruptcy Court.

**7.05. Indemnification Obligations.** Any obligation of any Debtor to indemnify any Person serving as a fiduciary of any employee benefit plan or employee benefit program of any Debtor, under charter, by-laws, contract, or applicable state law is deemed to be an executory contract and assumed by Reorganized Trussway as of the Confirmation Date (but subject to the occurrence of the Effective Date). Any obligation of any Debtor to indemnify, reimburse, or limit the liability of any Person, including but not limited to any officer or director of any Debtor, or any agent, professional, financial advisor, or underwriter of any securities issued by any Debtor related to any acts or omissions occurring before the Petition Date is rejected, canceled, and discharged under this Plan as of the Confirmation Date (but subject to the occurrence of the Effective Date), and any Claims resulting from such obligations are Disallowed under Bankruptcy Code § 502(e). Notwithstanding any of the foregoing, nothing contained in this Plan affects, impairs, or prejudices the rights of any Person covered by any applicable D&O Policy with respect to any such policy. Moreover, Reorganized Trussway will maintain in force for three years following the Effective Date appropriate D&O Policies covering pre-Effective Date directors and officers of the Debtors and containing substantially the same provisions and limits of coverage as the policies that were in force on the Petition Date. Reorganized Trussway will be responsible for paying the deductible or retention amounts under such policies for that three-year period.

**7.06. Benefit Plans.**

    **a. Generally.** On the Effective Date, all Benefit Plans will be either assumed or rejected and terminated as of the Confirmation Date as indicated on Exhibit E to this Plan, if not earlier terminated or assumed by the Debtors before the Confirmation Date. Any such terminations will be completed according to the terms and conditions of each Benefit Plan and effected in conformity with all statutory and regulatory requirements including any applicable notice provisions. Any undistributed, vested benefits of the terminated Benefit Plans will be distributed to the participants as provided by statute, the applicable regulations, and the Benefit Plans' provisions.

    **b. Regulatory Approvals.** In order to ensure that the Benefit Plans' terminations comply with the terms of the Benefit Plans, applicable statutes, and regulations, the Debtors will obtain any necessary approvals of the relevant regulatory agencies, such as the Pension Benefit Guaranty Corporation, the IRS, and the U.S. Department of Labor, in respect of such terminations. The Bankruptcy Court will retain jurisdiction to hear and determine any disputes relating to the termination of any Benefit Plans.

**c. Retirees.** If any Claim of a retiree against any Debtor gives that Debtor an indemnification claim under an agreement between that Debtor and any Person, the Debtor will, if necessary or appropriate, assign the indemnification claim to the retiree. Notwithstanding anything in this Section 7.06 or elsewhere in this Plan to the contrary, Reorganized Trussway will continue to honor all obligations of the Debtors owed to any retiree under any Benefit Plan as of the Confirmation Date solely to the extent, and for the duration of the period, the Debtors are contractually or legally obligated to provide those benefits, subject to any rights of the Debtors or Reorganized Trussway under applicable law.

### ARTICLE 8.
### SECURITIES TO BE ISSUED UNDER THE PLAN

**8.01. New Common Stock.** Principal provisions of the New Common Stock are summarized as follows:

    **a. Authorization.** The Reorganized Holdings Certificate authorizes the issuance of 9,000,000 shares of New Common Stock. On the Effective Date, or as soon after as practicable, Reorganized Holdings will issue approximately 1,000,000 shares of New Common Stock, which will represent 100% of the equity in Reorganized Holdings as of the Effective Date. All shares of New Common Stock to be issued in accordance with this Plan will, when issued, be duly authorized, validly issued, fully paid, and non-assessable.

    **b. Par Value.** The New Common Stock will have a par value of $0.001 per share.

    **c. Rights.** The New Common Stock will have such rights with respect to dividends, liquidation, voting, and other matters as are set forth in the Reorganized Holdings Certificate, and as provided under applicable law.

**8.02. Stockholder Agreement.** All holders of New Common Stock on and after the Effective Date will be subject to the rights and obligations set forth in the Stockholder Agreement. The holders of New Common Stock issued and outstanding on and after the Effective Date must (a) vote their shares of New Common Stock to cause Reorganized Holdings' board of directors to be composed, and the board members to be designated or elected, as set forth in Section 6.09.a of this Plan; (b) take any other action necessary or desirable (including voting shares of New Common Stock at any stockholder meeting or acting by written consent in lieu of a meeting) to give effect to the terms and provisions of the Stockholder Agreement and the organizational documents of Reorganized Holdings.

**8.03. Stock Transfer Restrictions.** No holder of New Common Stock may sell or transfer shares of New Common Stock other than (a) sales made under "piggyback registrations" under the Stockholder Agreement and (b) other transfers expressly permitted under the Stockholder Agreement. Without limiting the foregoing, all rights, obligations, and transfer restrictions pertaining to New Common Stock will be governed in all respects by the Stockholder Agreement.

**8.04. Section 1145 Exemption.** Under Bankruptcy Code § 1145, the issuance of the New Common Stock under this Plan is exempt from the registration requirements of Section 5 of the Securities Act and any state or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker dealer in, such securities.

### ARTICLE 9.
### CONFIRMATION WITHOUT ACCEPTANCE FROM ALL IMPAIRED CLASSES

**9.01. Impaired Classes.** Classes 2, 3, 7, and 8 are impaired under this Plan, and Classes 2, 3, and 7 are entitled to vote to accept or reject this Plan. Class 8 is deemed to reject the Plan without voting.

**9.02. Use of § 1129(b).** Because Class 8 is deemed to reject the Plan without voting, the Debtors intend to use the provisions of Bankruptcy Code § 1129(b) to satisfy the requirements for confirmation of this Plan with respect to Class 8. Additionally, if one or more of Classes 2, 3, and 7 votes to reject the Plan, the Debtors will use the provisions of Bankruptcy Code § 1129(b) to satisfy the requirements for confirmation of this Plan with respect to each rejecting Class.

**ARTICLE 10.**
**DETERMINATION OF CLAIMS**

**10.01. Objections to Claims.** Notwithstanding the occurrence of the Effective Date, and except as to any Claim that has been Allowed before the Effective Date, Reorganized Trussway may object to the allowance of any Claim against the Debtors or seek estimation of any Claim on any grounds permitted by the Bankruptcy Code.

 **a. Threshold.** Reorganized Trussway will prosecute, at its expense, any objection to a Claim but may choose, at its sole discretion, not to object to, or to settle, any Claim asserted in an amount of $50,000.00 or less over the amount set forth for that Claim.

 **b. Deadline.** All objections to Claims must be brought by filing the appropriate pleading in the Bankruptcy Court before the first Business Day that is 180 days after the Effective Date, but the Bankruptcy Court may approve a later date on Reorganized Trussway's motion filed (but not necessarily heard) before the first Business Day that is 180 days after the Effective Date.

**10.02. Disputed Claims Reserve.** In funding the Class 7 Fund, Reorganized Trussway will estimate the amount of, and the appropriate Pro Rata amount of Cash to be distributed on account of, each Disputed Claim in Class 7 at the Maximum Amount of the Claim. Notwithstanding anything to the contrary contained in this Plan, the Maximum Amount of a Disputed Claim will constitute the maximum amount at which the Disputed Claim may be Allowed.

**10.03. Distributions upon Allowance or Disallowance of Disputed Claims.** No distributions will be made to any holder of a Claim unless and until the Claim becomes an Allowed Claim. If a Claim is not an Allowed Claim as of the Effective Date, distributions on account of that Claim will commence only when the Claim becomes an Allowed Claim after the Effective Date or as otherwise specifically provided in this Plan. If a Disputed Claim becomes an Allowed Claim, Reorganized Trussway will make a distribution in accordance with the terms of this Plan applicable to Claims of the Class in which that Claim resides. If a Disputed Claim in Class 7 is Disallowed, any Cash held in the Class 7 Fund in respect of that Disallowed Claim will be used for distribution to holders of Allowed Claims in Class 7, thereby increasing Pro Rata distributions to all holders of Allowed Claims in Class 7. If an unclassified Disputed Claim or a Disputed Claim in a Class other than Class 7 is Disallowed, any Cash reserved or otherwise set aside in respect of that Disallowed Claim will revert to Reorganized Trussway. Nothing in this Section 10.03 or elsewhere in this Plan requires the Debtors or Reorganized Trussway to reserve or set aside Cash for distributions on account of any unclassified Disputed Claims or Disputed Claims in any Class other than Class 7.

**10.04. Contingent Claims.** Until a Contingent Claim becomes an Allowed Claim or is Disallowed, the Claim will be treated as a Disputed Claim for all purposes under this Plan. The holder of a Contingent Claim will be entitled to a distribution under this Plan only when the Contingent Claim becomes an Allowed Claim. Any Contingent Claim for reimbursement or contribution held by a Person that may be liable with any Debtor on a Claim of a Creditor is Disallowed as of the Effective Date if: (a) that Creditor's Claim is Disallowed; (b) the Claim for reimbursement or contribution is contingent as of the Effective Date; or (c) that Person asserts a right of subrogation to the rights of the Creditor under Bankruptcy Code § 509.

23

## ARTICLE 11.
## PRESERVATION OF LITIGATION CLAIMS

**11.01. Preserved Litigation Claims.** Subject to Section 13.05 of this Plan, in accordance with Bankruptcy Code § 1123(b)(3), all Preserved Litigation Claims, if any, are retained and reserved for the benefit of holders of Allowed Claims in Class 7. Reorganized Trussway is designated as the Estates' representative under Bankruptcy Code § 1123(b)(3)(B) for purposes of the Preserved Litigation Claims.

**11.02. Prosecution of Preserved Litigation Claims.** Reorganized Trussway will have the authority to prosecute, defend, compromise, settle, and otherwise deal with any Preserved Litigation Claims, and will do so in its capacity as a representative of the Estates in accordance with Bankruptcy Code § 1123(b)(3)(B). Reorganized Trussway will bear the fees and costs associated with litigating Preserved Litigation Claims without those fees and costs being a charge against the Class 7 Fund. Reorganized Trussway will have sole discretion to determine in its business judgment which Preserved Litigation Claims to pursue, which to settle, and the terms and conditions of those settlements.

**11.03. Distribution of Preserved Litigation Claims Proceeds.** Any monetary judgment, award, or other Cash proceeds resulting from the settlement or prosecution of a Preserved Litigation Claim will be distributed to the holders of Allowed General Unsecured Claims in Class 7 after deduction of the reasonable and necessary fees and costs that Reorganized Trussway incurs in connection with that Preserved Litigation Claim.

**11.04. Preservation of Insurance.** Any discharge and release of the Debtors from Claims as provided in this Plan or under the Bankruptcy Code, except as necessary to be consistent with this Plan, will not diminish or impair the enforceability of any insurance policy that may cover Claims against any Debtor or any other Person.

## ARTICLE 12.
## CONDITIONS PRECEDENT

**12.01. Conditions to Confirmation.** The following are conditions precedent to confirmation of this Plan:

**a. Approval of Disclosure Statement.** The Bankruptcy Court enters a Final Order approving the Disclosure Statement.

**b. Form of Confirmation Order.** The Bankruptcy Court enters the Confirmation Order in form and substance reasonably acceptable to the Debtors and the Agent Group. If the Debtors and the Agent Group are unable to reach an agreement with any party regarding the form and substance of the Confirmation Order, the Bankruptcy Court will resolve all such disputes.

**c. Substance of Confirmation Order.** The Confirmation Order contains the following:

(i) The provisions of the Confirmation Order are nonseverable and mutually dependent;

(ii) Approval of the assumption, rejection, or assumption and assignment of all executory contracts and unexpired leases under this Plan;

(iii) Approval of the Exit Financing Facility, the Stockholder Agreement, and any other Plan Documents the Debtors deem necessary;

(iv) All executory contracts or unexpired leases assumed and assigned by the Debtors during the Chapter 11 Cases or under this Plan remain in full force and effect for the benefit of Reorganized Trussway or any assignees of such contracts or leases, as the case may be, notwithstanding

any provision in any such contract or lease (including those described in Bankruptcy Code § 365(b)(2) and (f)) that prohibits or conditions such assignment or transfer or that enables, permits, or requires termination of such contract or lease;

(v) The Debtors are released and discharged from all obligations arising under all executory contracts and unexpired leases rejected by the Debtors during the Chapter 11 Cases or under this Plan;

(vi) This Plan does not provide for the liquidation of all or substantially all of the Debtors' property and confirmation of this Plan is not likely to be followed by the need for further financial reorganization of Reorganized Trussway or the need for further financial reorganization of any Debtor;

(vii) Except as expressly provided in this Plan, the Debtors are discharged as of the Confirmation Date from all Claims and any "debt" (as that term in defined in Bankruptcy Code § 101(12)) that arose on or before the Confirmation Date, and the Debtors' liability in respect of such Claims and debts is extinguished completely, whether reduced to judgment or not, liquidated or unliquidated, contingent or noncontingent, asserted or unasserted, fixed or unfixed, matured or unmatured, disputed or undisputed, legal or equitable, or known or unknown, or that arose from any agreement of the Debtors that has either been assumed or rejected in the Chapter 11 Cases or under this Plan, or obligation of the Debtors incurred before the Confirmation Date, or from the Debtors' conduct before the Confirmation Date, or that otherwise arose before the Confirmation Date including, without limitation, all interest, if any, on any such debts, whether such interest accrued before or after the Petition Date and, without limiting the foregoing, the discharge granted under this Plan is granted to the fullest extent allowed under Bankruptcy Code §§ 1141(a), 1141(b), 1141(c), and 1141(d)(1);

(viii) In accordance with Bankruptcy Code § 1123(b)(3)(B), Reorganized Trussway is appointed as the representative and agent of the Estates to prosecute, compromise, or abandon any Preserved Litigation Claims in accordance with this Plan;

(ix) Findings and conclusions sufficient to provide a basis for, and supporting the Bankruptcy Court's authorization of, substantive consolidation of the Estates in accordance with Sections 2.01 and 2.02 of this Plan; and

(x) Retention of jurisdiction of the Bankruptcy Court to the fullest extent permissible by applicable law, and at least to the extent contemplated by Article 14 of this Plan.

**12.02. Conditions to Effectiveness.** The following are conditions precedent to the occurrence of the Effective Date:

**a.** The Confirmation Date occurs;

**b.** The Exit Financing Facility is fully executed and closed (to the extent necessary for operations and Effective Date distributions under the Plan) and the DIP Lenders Claim is paid in full in Cash;

**c.** Reorganized Trussway retains sufficient Cash (from all applicable sources) on the Effective Date to make distributions to holders of Allowed Claims required by this Plan to be made on the Effective Date and the Class 7 Fund has been funded; and

**d.** Each of the Plan Documents and to be issued, entered into, delivered, or filed under this Plan are issued, entered into, delivered, or filed and are effective.

**12.03. Waiver of Conditions.** The Debtors with the Agent Group's consent and, when applicable, the Agent Group, may waive any condition to confirmation or the Effective Date, in whole or in part, at any time without notice, an order of the Bankruptcy Court, or any further action other than proceeding to confirmation and consummation of this Plan.

## ARTICLE 13.
## TITLE TO PROPERTY; THIRD PARTY RIGHTS AND RELEASES

**13.01. Vesting of Assets.** Except as provided in this Plan, the Confirmation Order, the Plan Documents, or the Exit Financing Facility, all property of the Estates will vest in Reorganized Trussway on the Effective Date free and clear of all Liens, Claims, and Equity Interests existing before the Effective Date. From and after the Effective Date, Reorganized Trussway may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, including the employment of, and payment to, Professionals except as otherwise provided in this Plan or the Confirmation Order.

**13.02. Discharge.** Except as provided in this Plan or the Confirmation Order, the rights granted under this Plan and the treatment of Claims and Equity Interests under this Plan are in exchange for and in complete satisfaction, discharge, and release of, all Claims including any interest accrued on General Unsecured Claims from the Petition Date and termination of all Equity Interests. Except as provided in this Plan or the Confirmation Order, confirmation of this Plan: (a) discharges the Debtors and Reorganized Trussway from all Claims or other debts that arose before the Confirmation Date, and all debts of the kind specified in Bankruptcy Code §§ 502(g), 502(h) or 502(i), whether or not: (i) a proof of claim based on such debt is filed or deemed filed under Bankruptcy Code § 501; (ii) a Claim based on such debt is Allowed under Bankruptcy Code § 502; or (iii) the holder of a Claim based on such debt has accepted this Plan; and (b) terminates all Equity Interests and other rights of Equity Interests in the Debtors except as expressly provided in this Plan. Without limiting the foregoing, the discharge granted under this Plan is granted to the fullest extent allowed under Bankruptcy Code §§ 1141(a), 1141(b), 1141(c), and 1141(d)(1).

**13.03. Injunction.** Except as provided in this Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold, or may hold a Claim or other debt or liability that is unclassified by this Plan or that is classified by Article 4 of this Plan or is subject to a distribution under this Plan, or an Equity Interest or other right of an equity security holder that is canceled or terminated under this Plan are permanently enjoined from taking any of the following actions on account of any such Claims, debts, liabilities, Equity Related Claims, or terminated Equity Interests or rights: (a) commencing or continuing in any manner any action or other proceeding against the Debtors or Reorganized Trussway (including any officer or director or other Person acting as a representative or otherwise on behalf of the Debtors or Reorganized Trussway); (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the Debtors, Reorganized Trussway, or their respective property; (c) creating, perfecting, or enforcing any Lien or encumbrance against the Debtors, Reorganized Trussway, or their respective property; (d) asserting a right of setoff, subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtors, Reorganized Trussway, or their respective property; and (e) commencing or continuing any action, in any manner, in any place, that does not comply with or is inconsistent with the provisions of this Plan or the Bankruptcy Code. Nothing in this Section 13.03 or elsewhere in this Plan is to be construed or is to have the effect of extinguishing, prohibiting, or otherwise limiting, the right of any holder of a Claim to assert a right to setoff or recoupment arising in connection with that Claim as part of the resolution and treatment of that Claim under this Plan.

**13.04. Exculpation.** None of the Debtors, the Prepetition Lenders, the Prepetition Agent, the DIP Lenders, the Exit Lenders, the agent under the Exit Financing Facility, or any of their respective officers, directors, members, or employees have or will incur any liability to any holder of a Claim or Equity Interest, or any other party in interest, or any of their respective members or former members, agents,

employees, representatives, financial advisors, attorneys, or affiliates, or any of their predecessors, successors, or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the negotiation and pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan, excluding: (a) all the foregoing entities' acts or omissions constituting gross negligence, bad faith, or willful misconduct, as finally determined by a court of competent jurisdiction; and (b) the obligations of the Debtors and Reorganized Trussway under this Plan. All the foregoing entities are entitled to rely reasonably on the advice of counsel with respect to their duties and responsibilities under this Plan or in the context of the Chapter 11 Cases.

**13.05. Releases.**

    **a. As To Debtors.** As of the Effective Date, except as set forth in this Plan, each holder of a Claim, whether Allowed or Disallowed at any time, irrevocably releases and forever discharges each of the Debtors and Reorganized Trussway, and its successors, assigns, agents, shareholders, directors, officers, employees, attorneys, consultants, advisors, subsidiary corporations, affiliated corporations, and Affiliates, from all claims, debts, liabilities, demands, offsets, obligations, costs, expenses, actions, and causes of action of every nature and description, known and unknown, which such holder now has or at any time may hold, by reason of any matter, cause, or thing occurred, done, omitted, or suffered to be done before the Effective Date, except claims for amounts due under this Plan.

    **b. As To Lenders.** As of the Effective Date, each of the Debtors, Reorganized Trussway, and each holder of a Claim, whether Allowed or Disallowed at any time, irrevocably releases and forever discharges each of the DIP Lenders, the Prepetition Lenders, the Prepetition Agent, the Exit Lenders, the agent under the Exit Financing Facility, each of such entities' successors, assigns, agents, shareholders, directors, officers, employees, attorneys, subsidiary corporations, affiliated corporations, and affiliates, from all claims, debts, liabilities, demands, offsets, obligations, costs, expenses, actions, and causes of action, of every nature and description, known and unknown, which each such releasing entity now has or at any time may hold, by reason of any matter, cause, or thing occurred, done, omitted, or suffered to be done before the Effective Date. The Debtors expressly ratify and confirm the releases of all lenders set forth in the DIP Financing Order.

    **c. As to UBS Capital.**

    (i) As of the Effective Date, and in exchange for the treatment of UBS Capital's Claims and Equity Interests in this Plan, UBS Capital irrevocably releases and forever discharges the Debtors, Reorganized Trussway, the Prepetition Lenders and the Prepetition Agent, and each of such entities' successors, assigns, agents, shareholders, directors, officers, employees, attorneys, subsidiary corporations, affiliated corporations, and affiliates, from all claims, debts, liabilities, demands, offsets, obligations, costs, expenses, actions, and causes of action, of every nature and description, known and unknown, which UBS Capital now has or at any time may hold, relating to the Prepetition Credit Facility (including, without limitation, claims resulting from the UBS L/C Draw) or UBS Capital's ownership of common stock of Holdings before the Effective Date.

    (ii) As of the Effective Date, the Debtors and Reorganized Trussway release all claims, then exiting or arising at any time, known or unknown, direct or indirect, liquidated or contingent, against UBS Capital.

    (iii) As of the Effective Date and after giving effect to the UBS L/C Draw to be made on the Effective Date, the Prepetition Lenders and the Prepetition Agent, on behalf of the Prepetition Lenders, release all claims against UBS Capital with respect to the Prepetition Credit Facility and against UBS AG with respect to the UBS Capital L/C.

**13.06. Preserved Litigation Claims and Disputed Claims Resolution.** Notwithstanding anything to the contrary in this Plan, any non-Debtor party to a Preserved Litigation Claim or a Disputed Claim that has obtained or obtains relief from the automatic stay or from the injunction provisions contained in Section 13.03 of this Plan to pursue resolution of their Claim in a forum other than the Bankruptcy Court will not be deemed to have violated any provision of this Plan by seeking a resolution as to Allowance, Disallowance, or amount of such Claim in such other forum, but the classification and distributions on account of any such Claim, once liquidated and Allowed or Disallowed, remain solely and exclusively subject to the Bankruptcy Court's continuing jurisdiction under Article 14 of this Plan and the terms and conditions of this Plan.

**13.07. Preservation of Insurance.** The discharge and release from Claims as provided in this Plan, except as necessary to be consistent with this Plan, do not diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtors or any other Person.

**ARTICLE 14.**
**RETENTION OF JURISDICTION**

**14.01. Jurisdiction.** Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain as much jurisdiction over the Chapter 11 Cases after the Effective Date as legally permissible including, without limitation, jurisdiction to:

**a.** Allow, disallow, determine, liquidate, classify, estimate, or establish the amount, priority, or secured or unsecured status of any Claim, and resolve any request for payment of any Administrative Claim and any objection to the Allowance or priority of any Claim;

**b.** Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized under the Bankruptcy Code or this Plan;

**c.** Resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which a Debtor is a party and to hear, determine and, if necessary, liquidate any Claims arising from, or Cure related to, assumption or rejection;

**d.** Ensure that distributions to holders of Allowed Claims are accomplished in accordance with this Plan;

**e.** Decide or resolve any motions, adversary proceedings, contested matters, and any other matters and grant or deny any applications or motions involving the Debtors that may be pending on the Effective Date;

**f.** Enter any necessary or appropriate orders to implement or consummate this Plan's provisions and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan or the Disclosure Statement;

**g.** Resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan, or any Person's obligations incurred in connection with this Plan;

**h.** Hear and determine any motion or application to modify this Plan before or after the Effective Date under Bankruptcy Code § 1127 or modify the Disclosure Statement or any contract, instrument, release, or other agreement or document issued, entered into, filed, or delivered in connection with this Plan or the Disclosure Statement; or hear or determine any motion or application to remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Disclosure

Statement, or any contract, instrument, release, or other agreement or document issued, entered into, filed or delivered in connection with this Plan or the Disclosure Statement, in such manner as may be necessary or appropriate to consummate this Plan, to the extent authorized by the Bankruptcy Code;

**i.** Issue injunctions, enter and implement other orders, or take any other necessary or appropriate actions to restrain any entity's interference with consummation or enforcement of this Plan;

**j.** Enter and implement any necessary or appropriate orders if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

**k.** Determine any other matters that may arise in connection with or related to this Plan, the DIP Facility, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document issued, entered into, filed, or delivered in connection with this Plan, the Disclosure Statement or the Confirmation Order;

**l.** Issue final decrees and enter orders closing the Chapter 11 Cases; and

**m.** Adjudicate the Disputed Claims and the Preserved Litigation Claims (including those to be initiated and prosecuted by Reorganized Trussway as the Estates' representative under Bankruptcy Code § 1123(b)(3)(B)), and any other cause of action or claims of the Debtors.

**ARTICLE 15.**
**AMENDMENT AND WITHDRAWAL OF PLAN**

**15.01. Amendment of Plan.** At any time before the Confirmation Date, the Debtors may alter, amend, or modify this Plan under Bankruptcy Code § 1127(a) as long as doing so does not materially and adversely affect the treatment and rights of the holders of Claims under this Plan. After the Confirmation Date but before substantial consummation of this Plan as defined in Bankruptcy Code § 1101(2), the Debtors or Reorganized Trussway may, under Bankruptcy Code § 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement, the Plan Documents, or the Confirmation Order, and any matters necessary to carry out the purposes and effects of this Plan as long as such proceedings do not materially and adversely affect the treatment of holders of Claims under this Plan. The Debtors must serve prior notice of such proceedings in accordance with the Bankruptcy Rules or applicable order of the Bankruptcy Court.

**15.02. Revocation or Withdrawal of Plan.** The Debtors reserve the right to revoke or withdraw this Plan at any time before the Confirmation Date. If withdrawn or revoked, this Plan will be deemed void and nothing contained in this Plan may be deemed a waiver of any Claims by or against the Debtors or any other Person in any further proceedings involving the Debtors or an admission of any sort, and this Plan and any transaction contemplated by this Plan may not be admitted into evidence in any proceeding.

**ARTICLE 16.**
**MISCELLANEOUS**

**16.01. Effectuating Documents; Further Transactions; Timing.** The Debtors, Reorganized Trussway, and all other parties to the Plan Documents are authorized and directed as of the Effective Date, and without further order of the Court, to execute, deliver, file, or record all Plan Documents and other contracts, instruments, releases, and other agreements or documents, and to take all actions necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan. All transactions required to occur on the Effective Date under the terms of this Plan are deemed to have occurred simultaneously.

**16.02. Exemption From Transfer Taxes.** In accordance with Bankruptcy Code § 1146(c): (a) the issuance, distribution, transfer, and exchange of the New Common Stock or assets or property of the Estates; (b) the creation, modification, consolidation, or recording of any deed of trust or other security interest, the securing of additional indebtedness by such means or by other means in furtherance of, or in connection with, this Plan or the Confirmation Order; (e) the execution, assignment, modification, or recording of any lease or sublease; and (f) the execution, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, the Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to, the foregoing are not subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, or real estate transfer tax, or other similar tax or governmental assessment and the appropriate state or local government officials or agents are directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

**16.03. Binding Effect.** This Plan is binding on, and inures to the benefit of, the Debtors and the holders of all Claims and Equity Interests, including the holders of Equity Related Claims, and their respective successors and assigns.

**16.04. Governing Law.** Except to the extent that the Bankruptcy Code or other federal law is applicable or as provided in any document entered into in connection with this Plan, the rights, duties and obligations of the Debtors and any other Person arising under this Plan are governed by, and construed and enforced in accordance with, the internal laws of the State of New York, without giving effect to New York's choice of law provisions.

**16.05. Modification of Treatment of Claims.** Reorganized Trussway reserves the right to modify the treatment of any Allowed Claim in any manner adverse only to the holder of such Claim at any time after the Effective Date on the prior written consent of the holder whose Allowed Claim treatment is being adversely affected.

**16.06. Setoffs and Recoupment.** The Debtors and Reorganized Trussway may, but are not required to, set off or recoup against any Claim or Equity Interest and the payments or other distributions to be made under this Plan in respect of such Claim, Claims of any nature that arose before the Petition Date that the Debtors may have against the holder of such Claim or Equity Interest to the extent such Claims may be set off or recouped under applicable law, but neither the failure to do so nor the fact of any Claim or Equity Interest under this Plan becoming Allowed constitutes a waiver or release by the Debtors or Reorganized Trussway of any such claim that it may have against such holder.

**16.07. Notices.** Any notice required or permitted to be provided under this Plan is required to be in writing and served by one of the following: (a) certified mail, return receipt requested, postage prepaid; (b) hand delivery; (c) reputable overnight courier service, freight prepaid; (d) e-mail; or (e) fax; addressed as follows:

<table>
<tr><td>If to the Debtors:</td><td>Trussway Industries, Inc.</td></tr>
<tr><td></td><td>9411 Alcorn</td></tr>
<tr><td></td><td>Houston, Texas 77093</td></tr>
<tr><td></td><td>Attn:    Chief Financial Officer</td></tr>
<tr><td></td><td>Fax:    713.691.6900</td></tr>
<tr><td></td><td>E-mail:    dtighe@Trussway.com</td></tr>
</table>

|            |          |                                    |
|------------|----------|------------------------------------|
| Copy to:   |          | Squire, Sanders & Dempsey, L.L.P.  |
|            |          | 40 North Central Avenue, Suite 2700|
|            |          | Phoenix, Arizona 85004             |
|            | Attn:    | Thomas J. Salerno, Esq.            |
|            |          | Jordan A. Kroop, Esq.              |
|            | Fax:     | 602.253.8129                       |
|            | E-mail:  | tsalerno@ssd.com                   |
|            |          | jkroop@ssd.com                     |

If to Agent Group:   Heritage Bank, SSB
                     13455 Noel Road, Suite 2220
                     Dallas, Texas 75240
                     Attn:    Kristen Mitchell
                     Fax:     972.934.4788
                     E-mail:  kristen.mitchell@bankheritage.com

Copy to:             Haynes and Boone, LLP
                     One Houston Center
                     1221 McKinney, Suite 2100
                     Houston, Texas 77010
                     Attn.:   Lenard M. Parkins
                     Fax:     713.236.5407
                     E-mail:  lenard.parkins@haynesboone.com

**16.08. Delivery of Notices.** If personally delivered, notice is deemed delivered on actual receipt; if faxed or e-mailed in accordance with this Plan, notice is deemed delivered noon of the first Business Day following transmission; if sent by overnight courier in accordance with this Plan, notice is deemed delivered noon of the first Business Day following deposit with such courier; and if sent by U.S. mail in accordance with this Plan, notice is deemed delivered as of the date of delivery indicated on the receipt issued by the relevant postal service; or, if the addressee fails or refuses to accept delivery, as of the date of that failure or refusal. Any party to this Plan may change its address for the purposes of this Plan by giving notice of the change.

**16.09. Termination of Statutory Committees.** All statutory committees appointed in the Chapter 11 Cases terminate on the Effective Date and have no further authority, duties, objections and responsibilities in respect of the Chapter 11 Cases after the Effective Date, except with respect to preparation, review and filing of, and objections to, applications for compensation and reimbursement of expenses.

**16.10. Severability.** If the Bankruptcy Court finds this Plan or any provision of this Plan to be invalid, illegal or unenforceable, or if the Bankruptcy Court cannot confirm this Plan under Bankruptcy Code § 1129, the Bankruptcy Court, at the Debtors' request, may retain the power to alter and interpret this Plan or any such provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the provision held to be invalid or unenforceable, and such provision will then become applicable as altered or interpreted. The Confirmation Order constitutes a judicial determination and provides that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable.

**16.11. Plan Documents.** Forms of the Plan Documents may be inspected in the office of the Clerk of the Bankruptcy Court during normal business hours. Holders of Claims or Equity Interests may obtain a copy of the Plan Documents upon written request to the Debtors in accordance with Section 16.07 of this Plan. Notwithstanding anything to the contrary contained in this Plan, including without limitation any

reference in this Plan to documents in the forms annexed to this Plan as exhibits, the Debtors may revise any Plan Document (a) by filing such revised Plan Document with the Bankruptcy Court more than ten days before the deadline for voting on this Plan, or (b) with the written consent of all parties in interest that are entitled to vote on this Plan and are materially and adversely affected by such revision.

**16.12. Inconsistency.** If any inconsistency between this Plan and the Disclosure Statement exists, the provisions of this Plan govern. If any inconsistency between this Plan and any Plan Document exists, the provisions of the Plan Document govern.

**16.13. Subordination.** The distributions under this Plan take into account the relative priority of each Claim in connection with any contractual subordination provisions relating to such Claim. Accordingly, distributions under this Plan are not and may not be subject to levy, garnishment, attachment, or other legal process by any holder of a Claim or Equity Interest purporting to be entitled to the benefits of such contractual subordination, and all such holders are deemed to have waived all contractual subordination rights they otherwise may have had.

**16.14. Withholding and Reporting Requirements.** In connection with this Plan and all instruments issued in connection with this Plan, the Debtors or Reorganized Trussway, as the case may be, must comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions under this Plan remain subject to any such withholding and reporting requirements. The Debtors and Reorganized Trussway, as the case may be, may take all actions necessary to comply with such withholding and reporting requirements. Notwithstanding any other provision of this Plan, each holder of an Allowed Claim that has received a distribution under this Plan of New Common Stock or Cash has sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding and other tax obligation on account of such distribution.

**16.15. Post-Effective Date Fees; Final Decree.** Reorganized Trussway will be responsible for paying any post-Effective Date fees under 28 U.S.C. § 1930(a)(6) and filing post-confirmation reports until the Bankruptcy Court enters a final decree, which will be as soon as practicable after distributions under this Plan have commenced. Notice of application for a final decree need be given only to those holders of Claims and Equity Interests and other parties that, after the Effective Date, specifically request such notice.

**16.16. De Minimis Distributions.** No distributions of less than $10 will be made to any Creditor on account of any Claim. If a claimant holding an Allowed Claim does not receive a distribution owing to the provisions of this Section 16.16 on the Effective Date or any subsequent date, the Allowed Claim remains eligible for distributions on the first date set for distributions when such distribution exceeds $10. No payments or distributions under this Plan of fractions of dollars will be made. When any such fractional dollar payment or distribution would otherwise be required, the actual payment or distribution made will reflect a rounding, up or down, of such fraction to the nearest whole dollar.

**16.17. Method of Payment; Payments, Filings, and Notices Only on Business Days.** Payments of Cash under this Plan must be made by check drawn on a domestic bank or by wire transfer from a domestic bank. Whenever any payment, distribution, filing, delivery, or notice to be made under this Plan is due on a day other than a Business Day, such payment, distribution, filing, delivery, or notice may instead be made, without interest or penalty, on the immediately following Business Day.

Dated:  January 18, 2005

**TRUSSWAY INDUSTRIES, INC.,** on behalf of
itself and its subsidiaries and affiliates, all Debtors
and Debtors-In-Possession

By: _____*/s/ William Adams*_____
          William Adams
          President and Chief Executive Officer

Exhibit A

Reorganized Holdings Certificate

Exhibit B

Reorganized Holdings By-Laws

Exhibit C

Preserved Litigation Claims

*[To Come]*

Exhibit D

Stockholder Agreement

Exhibit E

Assumed and Rejected Executory Contracts and Unexpired Leases

***[To Come]***

Exhibit F

Exit Facility Term Sheet

Exhibit G

Prepetition Lenders